UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| BAYSAND INC., | Case No. 15-cv-02425-BLF |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO STAY AS MODIFIED** |
| TOSHIBA CORPORATION, | |
| Defendant. | [Re: ECF 20, 34] |

Before the Court is Defendant's Motion to Dismiss the Complaint or Stay Proceedings. ECF 20, 34. Defendant contends that an arbitration tribunal should determine the threshold question of whether or not this dispute is abritrable and asks the Court to dismiss or stay this proceeding pending arbitration. *Id.* Plaintiff opposes the motion, arguing that the Court must determine arbitrability. ECF 36-1. For the reasons below, the Court finds that an arbitrator should determine the arbitrability of Plaintiff's claims. Accordingly, the Court DENIES Defendant's motion to dismiss and GRANTS Defendant's motion to stay pending the arbitrator's determination of arbitrability.

**I.  BACKGROUND**

Plaintiff BaySand, Inc. describes itself as a "fabless semiconductor company developing metal only, configurable ASIC using innovative and disruptive Metal Configurable Standard Cell technology with its principal place of business in Morgan Hill, California." Compl. ¶ 7. Plaintiff alleges that it owns several patents relating to architecture and circuitry for integrated circuits. *Id.* ¶ 9.

Defendant Toshiba Corporation has its principal place of business in Tokyo, Japan, *id.* ¶ 8, and describes itself as a "world-class innovator and industry leader in advanced semiconductor

products and technologies," *see* Mot. at 3. Two agreements, described in detail below, govern the relationship between the parties.

### A. License Agreement

On or about October 9, 2012, Plaintiff and Defendant entered into a license agreement ("License Agreement"), which Plaintiff alleges allows Defendant to use a 65 or 40 nanometer mode of Plaintiff's patented technology. Compl. ¶ 10. The License Agreement includes an arbitration clause, which states:

> Any dispute, controversies or differences which may arise out of or in connection with the interpretation or performance of this Agreement . . . shall be finally settled according to the Rules of the Conciliation and Arbitration of the International Chamber of Commerce ["ICC Rules"]. Arbitration proceedings shall take p[l]ace in Tokyo, Japan. The decision of the arbitration proceedings shall be final and binding upon both Parties."

Chachkes Exh.1, ECF 34-2 at Article 12.3.

Plaintiff alleges that a dispute exists between the parties regarding whether the License Agreement grants Defendant the right to use a 28 nanometer mode of Plaintiff's technology ("28 Nanometer Technology"). Compl. ¶ 24. Plaintiff contends that the license does not extend to the 28 Nanometer Technology. *Id.* ¶ 10. Rather, Plaintiff asserts that, since early 2014, it has been working on licensing the 28 Nanometer Technology to another customer ("Customer"). *Id.* ¶ 12. Plaintiff alleges that it expressly did not communicate the nature and existence of that relationship, nor Customer's identity, to Defendant. *Id.*

### B. Non-Disclosure Agreement

Plaintiff alleges that, in late 2014, Defendant expressed an interest in purchasing or merging with Plaintiff. *Id.* ¶ 13. Plaintiff allowed Defendant to engage in due diligence, subject to Defendant entering into a non-disclosure agreement ("NDA"). *Id.*

On or about October 13, 2014, the parties entered into the NDA to allow Defendant to "evaluate the feasibility of acquiring all or part of [Plaintiff]." Chackes Exh. 2, ECF 34-3 at 1. Like the License Agreement, the NDA includes an arbitration clause. The clause states:

> Any dispute, controversies or differences which may arise out of or in connection with the interpretation or performance of this Agreement . . . shall be exclusively

> and finally settled by arbitration.  The arbitration shall take place in Tokyo, Japan. The arbitration proceedings shall be conducted . . . in accordance with the [ICC Rules]. The decision of the arbitration proceedings shall be final and binding upon the Parties.

*Id.* ¶ 13.

Plaintiff alleges that, through the due diligence process, Defendant obtained information regarding Plaintiff's discussions with Customer, as well as information regarding Plaintiff's technology and patent claims. Compl. ¶ 13.

Plaintiff contends that, after accessing this information, Defendant contacted Customer and falsely asserted that Defendant had an exclusive license to the 28 Nanometer Technology. *Id.* ¶ 14. Plaintiff additionally alleges that Defendant began circulating a product sheet that included the option of scaling to a 28 nanometer mode, *id.* ¶15, and issued a press release announcing that it was developing a 28 nanometer mode product based on Plaintiff's technology, *id.* ¶ 16. Plaintiff asserts that Customer has declined to engage in further licensing discussions until and unless Defendant confirms that it has no rights with respect to the 28 Nanometer Technology, which Defendant refuses to do. *Id.* ¶ 17.

### C. Procedural History

On June 1, 2015, Plaintiff filed a complaint alleging five causes of action: 1) declaratory judgment of patent infringement, 2) promissory fraud, 3) tortious interference with prospective business advantage, 4) misappropriation of trade secrets, and 5) trade libel. ECF 1. On the same day, Plaintiff also filed a Request for Arbitration with the International Chamber of Commerce ("ICC"), asserting claims of breach of contract, declaratory judgment regarding the scope of the License Agreement, and breach of the NDA. Chachkes Exh. 3, ECF 34-4.

On July 15, 2015, Defendant filed this Motion to Dismiss under Rule 12(b)(1), (3), or (6) or to Stay Pending Arbitration pursuant to Section 3 of the Federal Arbitration Act ("FAA"). Plaintiff opposed the motion on August 17, 2015 and Defendant replied on September 8, 2015. The Court heard oral argument on October 29, 2015.

## II.     LEGAL STANDARD

### A. The Federal Arbitration Act

3

1   Chapter 2 of the Federal Arbitration Act ("FAA") governs arbitration agreements arising out of commercial legal relationships between parties that are not all United States citizens, 9 U.S.C. § 202, and is "intended to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 538 (1995). Because the parties here are a Japanese and an American company engaged in a commercial transaction that includes at least two agreements with arbitration clauses, the FAA applies to this case.

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). The court's role under the FAA is limited to determining "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F. 3d 1125, 1130 (9th Cir. Aug. 11, 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

Even these gateway issues can be submitted to an arbitrator where there is "clear and unmistakable evidence" that the parties intended that result. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (citing *Howsam*, 537 U.S. at 83).

If the court finds that the parties clearly and unmistakably delegated the power to decide arbitrability to an arbitrator, then the court performs a limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006); *see also Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-cv-01503-WHO, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2015 WL 1886882, at *8 (N.D. Cal. Apr. 24, 2015).

If the assertion is not wholly groundless, a court may dismiss or stay the action. *See Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 1738017, at *7 (N.D. Cal. Apr. 8, 2015) (citing *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)) (discussing

4

court's discretion to dismiss or stay upon a finding that parties agreed to arbitrate arbitrability).

**B. Dismissal Under Rule 12(b)(6)**

Defendant brings this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Dismissal for failure to state a claim under Rule 12(b)(6) is proper where a court has determined that the claims before it are subject to arbitration. *See, e.g., Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 726 (9th Cir. 1999). Courts in this circuit have also dismissed claims upon a finding that an arbitrator must determine arbitrability. *See Daiei, Inc. v. U.S. Shoe Corp.,* 755 F. Supp. 299, 303 (D. Haw. 1991).

**C. Stay Under Section 3 of the Federal Arbitration Act**

Alternatively, Defendant asks the Court to stay this action pending arbitration pursuant to Section 3 of the FAA, 9 U.S.C. § 3. If the assertion of arbitrability is not "wholly groundless," then the action can be stayed pending a ruling on arbitrability by an arbitrator. *See Qualcomm*, 466 F.3d at 1371.

**DISCUSSION**

The parties agree that a valid arbitration agreement exists between them. *See, e.g.* Mot. at 6, Opp. at 1. Plaintiff has already invoked the clause to file a Request for Arbitration with the ICC. *See* Chachkes Exh. 3.

Therefore, the threshold issue in this case is who must determine the arbitrability of Plaintiff's claims: an arbitrator or the Court. Defendant asserts that the parties' incorporation of the ICC Rules into their License Agreement and NDA constitutes "clear and unmistakable" evidence of their intent to arbitrate arbitrability. Plaintiff responds that the incorporation does not qualify as such evidence for two reasons: first, because Plaintiff was not a sophisticated party when it entered into the arbitration agreements and, second, because Defendant's assertion of

---

[1] Alternatively, Defendant argues that, because an arbitrator must determine whether Plaintiff's claims are arbitrable, the Court lacks subject matter jurisdiction and is not the proper venue for this case, also enabling dismissal under Rules 12(b)(1) and 12(b)(3), respectively. Because, as discussed below, the Court exercises its discretion to stay rather than dismiss this action, the Court does not reach these arguments.

arbitrability is "wholly groundless."

**A. ICC Rules**

Defendant argues that the arbitration clauses of the License Agreement and the NDA constitute "clear and unmistakable evidence" of the parties' intent to arbitrate arbitrability because they incorporate the ICC Rules, which grant arbitrators the power to determine their own jurisdiction. *See* Mot. at 7; *see also* Chachkes Exh. 2 at Article 12.3, Exh. 3 ¶ 13. Specifically, the ICC Rules provide that "any question of jurisdiction . . . shall be decided directly by the arbitral tribunal." Art. 6.3. This includes "pleas concerning the existence, validity or scope of the arbitration agreement." *Id.*

The Ninth Circuit has considered the effect of incorporating similar arbitration rules in two recent cases. In *Brennan v. Opus Bank*, the court considered incorporation of the American Arbitration Association ("AAA") rules into an employment agreement between a bank and its high-level executive. 796 F.3d at 1126-27. Similar to the ICC Rules, the AAA rules state that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* at 1130. The court held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* In reaching this holding, the Ninth Circuit joined the consensus of "virtually every circuit" with regard to incorporation of the AAA rules. *Id; see also Oracle Am., Inc. v. Myriad Grp. A.G.,* 724 F.3d 1069, 1074 (9th Cir. 2013).

In an earlier decision, *Oracle America, Inc., v. Myriad Group A.G.*, the Ninth Circuit considered whether this view of AAA rules should extend to cover other arbitration rules with similar jurisdictional provisions. 724 F.3d at 1074. The agreement at issue in *Oracle* was a source license between a Swiss company and a Delaware corporation. *Id.* at 1071. It incorporated the United Nations Commission on International Trade Law (UNCITRAL) rules, which, like the AAA and ICC Rules, empower the arbitral tribunal to rule on its own jurisdiction. *Id.* at 1073. *Oracle* held that "as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator." *Id.* at 1075.

6

Like the AAA and UNCITRAL rules, the ICC Rules grant the arbitrator the authority to determine its own jurisdiction. *See* ICC Rules, Art. 6.3. Accordingly, the Court finds that incorporation of the ICC Rules provides "clear and unmistakable" evidence of parties' intent to arbitrate arbitrability, absent some exception.

## B. Unsophisticated Party

Plaintiff argues that, while incorporation of the ICC Rules may constitute "clear and unmistakable" evidence of sophisticated parties' intent to arbitrate arbitrability, the rule does not apply when any party to the agreement is unsophisticated. Plaintiff asserts that this distinction matters here because Plaintiff was unsophisticated when it entered into both agreements—and continues to be unsophisticated now. Opp. at 5.

Plaintiff contends that *Oracle* requires this distinction. As noted above, *Oracle* held that parties to an agreement shall be expected to understand that incorporation of the UNCITRAL rules delegates arbitrability to the arbitrator "as long as the agreement is between sophisticated parties to commercial contracts." 724 F.3d at 1075. In a footnote, the court elaborated that the decision expresses "no view as to the effect of incorporating arbitration rules into consumer contracts." *Id.* at n.2.

Plaintiff asks the Court to read this language to mean that the rule regarding incorporation of AAA-like rules does not apply to agreements involving unsophisticated parties. Opp. at 4.[2]

To do so, Plaintiff argues that the Court should follow the approach of *Tompkins v. 23andme, Inc.,* which declined to extend the "doctrine from commercial contracts between

---

[2] Defendant asserts that the Ninth Circuit's recent decision in *Brennan* undercuts Plaintiff's entire claim that the clear and unmistakable evidence test is subject to a sophisticated parties requirement. Reply at 2. *Brennan* considered the effect of incorporating AAA rules into an employment agreement between two sophisticated parties: a "regional financial institution" and "an experienced attorney and businessman" who had been a partner at a major firm for seven years and held executive-level legal positions at Washington Mutual for another seven years. *Id.* The sophistication of the parties was undisputed, but *Brennan* nevertheless expressed that its holding "should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial'" for the "clear and unmistakable evidence" rule to apply. 796 F.3d at 1130. Rather, "this rule could also apply to unsophisticated parties or to consumer contracts." *Id.*

Because the Court refuses to find that Plaintiff was or is an unsophisticated party akin to a consumer, the Court need not determine the effect of incorporating the ICC Rules into a contract between unsophisticated parties.

7

1  sophisticated parties to online click-through agreements crafted for consumers." 2014 WL
2  2903752, at *11, *13 (N.D. Cal. June 25, 2014). *Tompkins* considered terms of service (TOS) that
3  consumers had no opportunity to negotiate and which purported to bind users who were never
4  asked to view, much less accept, the terms. *Id.* at *10.

5       Defendant argues that *Tompkins* is "plainly irrelevant here." Reply, ECF 45 at 3. Indeed,
6  Plaintiff fails to explain how *Tompkins*—which limited its holding to "online click-through
7  agreements crafted for consumers" and considered non-negotiable terms that purported to govern
8  any individual who visited a website—could possibly apply to the facts at issue here, where two
9  companies with access to legal counsel mutually agreed to a heavily-negotiated contract. Instead,
10 Plaintiff asks the Court to find that it was not a "sophisticated party" because it is an early-stage
11 start-up and retained no counsel while negotiating the License Agreement.[3] Opp. at 5.

12      Plaintiff's contention that it is an unsophisticated party akin to the consumers in *Tompkins*
13 stretches all sense of the imagination. Plaintiff's business depends on entering into license
14 agreements in order to make money, and Plaintiff has been in this business for the past 12 years.
15 *See* Werfelli Decl., ECF 37 ¶ 3. The business is so lucrative that Plaintiff alleges it is capable of
16 sustaining millions of dollars in damages. *See* Compl. ¶ 2. Plaintiff is far from an unsophisticated
17 consumer entering into an unfamiliar contract.

18      Plantiff's argument that it was unsophisticated because it did not retain counsel while
19 negotiating the License Agreement is similarly weak. First, it is worth noting that Plaintiff did
20 retain counsel while negotiating the NDA, *see* Prokop Decl., Exh. 6, ECF 45-7—and that Plaintiff
21 retains counsel now, even while continuing to characterize itself as an "unsophisticated party," *see*
22 Opp. at 5. Second, the License Agreement expressly provides that "the Parties *and their respective*
23 *counsel*" negotiated the agreement. ECF 34-2 at Art 12.11 (emphasis added). Though no
24 additional facts suggest that Plaintiff retained counsel while negotiating the License Agreement,
25 Plaintiff was aware that it could retain counsel and chose not to. *See* Werfelli Decl. ¶ 9 ("I
26 concluded that I did not need to have the assistance of counsel in the negotiations"). Furthermore,

---

[3] Plaintiff clarified that it does not request an evidentiary hearing on this matter at the October 29, 2015 hearing.

as demonstrated above, the arbitration clause Plaintiff included without the aid of counsel in the License Agreement is nearly identical to the clause developed with counsel for the NDA.

Nevertheless, Plaintiff argues that Mr. Werfelli "had no understanding whatsoever that by . . . agreeing to arbitrate certain disputes he was giving up [Plaintiff's] right to require that arbitrability be decided by a U.S. court." Opp. at 6. However, the draft of the agreement prepared by Plaintiff also incorporated rules that leave the determination of arbitrability up to the arbitrator. *See* Prokop Exh. 1, ECF 45-2 ¶ 14.2. Furthermore, Mr. Werfelli acknowledges that he understood that the terms of the Licensing Agreement required certain disputes to be arbitrated and that the arbitration would be administered by the ICC. Werfelli Decl. ¶ 8.

This level of understanding stands in sharp contrast to the consumers in *Tompkins* who were "forced . . . to comprehend the import of the 'rules and auspices' of the AAA; locate those rules independently; determine that the AAA's Commercial Rules apply . . . and then specifically identify Rule R–7(a) to learn of the delegation provision," 2014 WL 2903752 at *12. Accordingly, the Court refuses to find that Plaintiff was or is an unsophisticated party akin to a consumer.

### C.  Wholly Groundless

Plaintiff additionally asserts that Defendant's position that the claims are arbitrable is "wholly groundless" because the scope of the clauses is narrow and does not cover the claims asserted in this case. Opp. at 6.

When the parties to an agreement clearly and unmistakably delegate arbitrability to an arbitrator, the Court's only remaining inquiry is whether the assertion of arbitrability is "wholly groundless." See *Zenelaj v. Handybook, Inc.*, 82 F. Supp. 3d 968, 971 (N.D. Cal. Mar. 3, 2015). In performing this inquiry, the "court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration. Because any inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator . . . the district court need not, and should not, determine whether [plaintiffs' claims] are in fact arbitrable." *Id.* (quoting *Qualcomm*, 466 F.3d at 1374).

#### i.    *Scope of the Arbitration Clauses*

Here, the arbitration clauses of both agreements apply to any dispute that "may arise out of

or in connection with the interpretation or performance of" the agreements. Plaintiff argues that the language is narrow by relying on three Ninth Circuit cases: *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983), *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994), and *Cape Flattery Ltd. v. Titan Mar., LLC,* 647 F.3d 914, 923 (9th Cir. 2011). In each of these cases, the court finds that an arbitration clause covering disputes "arising under" but not "relating to" an agreement covers only those disputes "relating to the interpretation and performance of the contract itself." *See, e.g., Tracer,* 42 F. 3d at 1295.

Plaintiff asks the Court to apply that interpretation here, but, as Defendant notes, the arbitration clauses at issue in this case "expressly cover disputes 'in connection with' the interpretation and performance of the agreements"—language that is strikingly similar to the "relating to" language the lack of which *Mediterranean Enterprises*, *Tracer*, and *Cape Flatterly* relied upon to find the clauses before them narrow. Reply at 9.

Given the "in connection" language, Defendant argues that the Court should instead follow the Ninth Circuit's approach in *Simula*, which finds the phrase "arising in connection with" to be broad and concludes that it "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). *See also Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F. 3d 1126, 1131 (9th Cir. 2000) (holding that "arising out of or relating to" language is "broad and far reaching").

Plaintiff seeks to distinguish *Simula*, which considered an arbitration clause governing disputes "arising in connection with the agreement," from the clauses here, which "limit[] arbitrable claims to those 'in connection with the *interpretation* or *performance* of' the agreements." Opp. at 13 (emphasis in original). Plaintiff argues that this is narrower language. However, Plaintiff does not cite a single case to support this distinction. Meanwhile, Defendant points to *AT & T Techs., Inc. v. Commc'ns Workers of Am,* where the Supreme Court held that a clause which provides for "arbitration of 'any differences arising with respect to the *interpretation of this contract* or *the performance of any obligation hereunder*'" is so broad that "only the most

10

forceful evidence of a purpose to exclude the claim from arbitration can prevail." 475 U.S. 643, 650 (1986) (emphasis added).

With respect to the scope of the arbitration clauses, the Court therefore concludes that Defendant's assertion that they are broad in scope easily surpasses the wholly groundless threshold. Accordingly, the Court treats the arbitration clauses as broad in scope.

### ii.     *Precise Issues*

After determining the scope of the arbitration clause, the Court is required to examine "the precise issues that the moving party asserts are subject to arbitration" to determine if the assertion is wholly groundless. *See Zenelaj*, 82 F. Supp. 3d at 971. The Court finds that none of Defendant's assertions is wholly groundless.

Plaintiff's first claim, declaratory judgment of patent infringement, alleges that Defendant infringes Plaintiff's patent for the 28 Nanometer Technology. In its pleadings, Plaintiff alleges that a "dispute exists between [the parties] regarding" whether Defendant has "the right under the License Agreement to use the 28 Nanometer Technology." Compl. ¶ 24.  Thus, Defendant's assertion that the first claim "may arise out of or in connection with the interpretation or performance of" the License Agreement appears far from wholly groundless.

Plaintiff's second, third, and fourth claims—promissory fraud, tortious interference with prospective business advantage, and misappropriation of trade secrets, respectively—rely on an allegation that Defendant improperly obtained Plaintiff's confidential information. *See id.* ¶¶ 31, 36, 43. Plaintiff alleges that it agreed to share this information "subject to [Defendant] entering into" the NDA. *Id.* ¶ 13. In asserting that Defendant's motives and actions were improper, Plaintiff appears to directly challenge the NDA, which defined the "Purpose" of the agreement as "evaluat[ing] the feasibility of acquiring all or part of [Plaintiff]." Chackes Exh. 2 at 1.

Plaintiff's third and fourth claims also touch the License Agreement. Central to the third claim is Plaintiff's allegation that Defendant intentionally misrepresented that it had an exclusive license to the 28 Nanometer Technology. Compl. ¶ 37. And, in the fourth claim, Plaintiff alleges that Defendant misappropriated trade secrets, in part, to avoid performing its duties under the License Agreement. *Id.* ¶ 44. Thus, Defendant's assertion regarding that the second, third, and

fourth claims fall within the arbitration clause of either or both agreements is not wholly groundless.

Plaintiff's final cause of action, trade libel, alleges that Defendant published false and/or disparaging remarks about the technology Plaintiff licensed to Defendant under the License Agreement. *Id.* ¶ 49. In order to determine whether Defendant's alleged statements that, for example, "there was a problem in the [65 nanometer] product" was false or disparaging, a fact-finder may well have to determine how the product was expected to perform under the License Agreement. Thus, Defendant's assertion that this claim, too, is arbitrable is not wholly groundless.

Without determining whether or not each claim is in fact arbitrable, the Court finds that Defendant's assertion of their arbitrability is not wholly groundless.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that this action is STAYED pending the arbitrator's determination of the arbitrability of Plaintiff's claims. In addition, the Court ORDERS the parties to update the Court on the progress of the arbitration every six months.

Dated: November 19, 2015

_____
BETH LABSON FREEMAN
United States District Judge